UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| | |
|---|---|
| TY WILLIAMS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br><br>BURGERBUSTERS INC.; BURGERBUSTERS III, L.C.; BURGERBUSTERS IV, L.L.C.; BURGERBUSTERS V, L.L.C., BURGERBUSTERS VIII, L.L.C., BURGERBUSTERS IX, L.L.C., BURGERBUSTES X, L.L.C., BURGERBUSTERS XI, L.L.C., BURGERBUSTERS, XII, L.L.C.,<br><br>Defendants. | Case No.  1:21-cv-01083<br><br>**NATIONWIDE**<br><br>**CLASS ACTION COMPLAINT** |

**NATIONWIDE CLASS ACTION COMPLAINT**

COMES NOW, Plaintiff TY WILLIAMS ("Plaintiff"), on behalf of himself and all others similarly situated, and asserts as follows:

**INTRODUCTION**

1.      Plaintiff, a person with a mobility disability who use a wheelchair for mobility, brings this action individually and on behalf of all others similarly situated against Defendants, asserting violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), and its implementing regulations. Defendants    BURGERBUSTERS INC.; BURGERBUSTERS III, L.C.; BURGERBUSTERS IV, L.L.C.; BURGERBUSTERS V, L.L.C., BURGERBUSTERS  VIII,  L.L.C.,  BURGERBUSTERS  IX,  L.L.C.,  BURGERBUSTES  X,

L.L.C., BURGERBUSTERS XI, L.L.C., BURGERBUSTERS, XII, L.L.C., (collectively, "Defendants") collectively own, lease, and/or operate at least one hundred fifty-three (153) Taco Bell restaurants in the states of Virginia, North Carolina, Maryland, West Virginia and Pennsylvania.  Plaintiff's claims arise from own his experience with excessive sloping conditions in purportedly accessible parking spaces, access aisles, and curb ramps ("Parking Area" or "Parking Areas") at places of public accommodation owned, operated, controlled, and/or leased by Defendants ("Defendants' facilities"), and from site investigations at fourteen (14) of Defendants' facilities also finding excessive sloping conditions.

2.     Plaintiff asserts that these excessive sloping conditions persist in part as a result of Defendants' existing but inadequate internal maintenance procedure, which fails to ensure compliance with the sloping requirements of the ADA's implementing regulations.  *See* 28 C.F.R. §§ 36.101 *et seq*.

3.     The ADA expressly authorizes the injunctive relief aimed at modification of ***existing*** policies, practices, or procedures that Plaintiff seeks in this action.  In relevant part, the ADA states:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. … Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy…

> 42 U.S.C. § 12188(a)(2).

4.     Based on the extensive factual investigation performed by Plaintiff's investigators, Plaintiff believes and therefore asserts that numerous additional facilities owned, controlled, and/or operated by Defendants have Parking Areas that are, or have become, inaccessible to individuals who rely on wheelchairs for mobility due to excessive sloping, demonstrating that the Defendants'

existing internal maintenance procedure (discussed at ¶¶ 21-24 below) is inadequate and must be modified.  42 U.S.C. § 12188(a)(2).

5.      Plaintiff brings this action individually and on behalf of all other similarly situated wheelchair users to compel Defendants to (i) remediate all access barriers within the Parking Areas of their facilities, and (ii) modify their existing policies to ensure that their facilities comply with the ADA implementing regulations' excessive sloping requirements.  28 C.F.R. §§ 36.101 *et seq.*

6.      Consistent with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

   a.  Defendants remediate excessive sloping within the Parking Areas at Defendants' facilities, consistent with the ADA's implementing regulations;

   b.  Defendants modify their existing maintenance policy to ensure that the excessive sloping conditions within the Parking Areas at Defendants' facilities do not reoccur; and

   c.  Plaintiff's representatives shall monitor Defendants' facilities to ensure that the injunctive relief ordered pursuant to Paragraph 9.a. and 9.b. has been implemented and will remain in place.

7.      Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the Plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals.  To that end, the note to the 1996 amendment to Rule 23 states:

   Subdivision(b)(2).  This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate . . ..  Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## PARTIES

8.      Plaintiff Ty Williams is, and at all times relevant hereto was, a resident of Montgomery County, Maryland. Plaintiff is a person with a mobility disability stemming from an injury during a football game in 2015 which resulted in a fracture to his sixth vertebrae, leaving him paralyzed from the waist down. As a result of his disability, Plaintiff uses a wheelchair for mobility. Despite his significant injuries, Mr. Williams earned a bachelor's degree in government from Georgetown University. A year and a half after the injury, Mr. Williams was the keynote graduation speaker for his high school alma mater, Quince Orchard in Maryland's Montgomery County.

9.      Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

10.      Defendant BURGERBUSTERS INC., is, and at all relevant times was, a Virginia Corporation, doing business in the Commonwealth of Virginia, and the States of West Virginia, North Carolina, and Maryland as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the aforementioned states. Defendant BURGERBUSTERS INC.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

11.      Defendant BURGERBUSTERS III, L.C., is, and at all relevant times was, a Virginia Limited Liability Company, doing business in the Commonwealth of Virginia and States of West Virginia and North Carolina, as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the aforementioned states. Defendant BURGERBUSTERS III, L.C.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

4

12.     Defendant BURGERBUSTERS IV, L.L.C., is, and at all relevant times was, a Virginia Limited Liability Company, doing business in the Commonwealth of Virginia and State of West Virginia, as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the aforementioned states. Defendant BURGERBUSTERS IV, L.L.C.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

13.     Defendant BURGERBUSTERS V, L.L.C., is, and at all relevant times was, a Virginia Limited Liability Company, doing business in the Commonwealth of Virginia, as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the state. Defendant BURGERBUSTERS V, L.L.C.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

14.     Defendant BURGERBUSTERS VIII, L.L.C., is, and at all relevant times wa,s a Virginia Limited Liability Company, doing business in the Commonwealths of Virginia and Pennsylvania, and States of West Virginia and North Carolina, as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the aforementioned states. Defendant BURGERBUSTERS VIII, L.L.C.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

15.     Defendant BURGERBUSTERS IX, L.L.C., is, and at all relevant times was, a Virginia Limited Liability Company, doing business in the Commonwealth of Virginia as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the state. Defendant BURGERBUSTERS IX, L.L.C.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

16.     Defendant BURGERBUSTERS X, L.L.C., is, and at all relevant times was, a Virginia Limited Liability Company, doing business in the Commonwealth of Virginia as the

owner, lessee, and/or operator of dozens of Taco Bell restaurants in the state. Defendant BURGERBUSTERS IV, L.L.C.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

17. Defendant BURGERBUSTERS XI, L.L.C., is, and at all relevant times wa,s a Virginia Limited Liability Company, doing business in the Commonwealth of Virginia as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the state. Defendant BURGERBUSTERS XI, L.L.C.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

18. Defendant BURGERBUSTERS XII, L.L.C., is, and at all relevant times was, a Virginia Limited Liability Company, doing business in the Commonwealth of Virginia as the owner, lessee, and/or operator of dozens of Taco Bell restaurants in the state. Defendant BURGERBUSTERS XXI, L.L.C.'s primary mailing address, and its corporate officers' address is 2242 West Great Neck Road, Virginia Beach, Virginia, 23451.

19. Plaintiff asserts that Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, affiliates, agents and/or employees and/or employers of their Co-Defendants, under shared management, ownership, and common control of each other, and part of a single Franchise Group, and in doing the things alleged in this Complaint were acting within the course of such agency, affiliation, shared management, ownership, control, and/or employment and with the permission and consent of their Co-Defendants.

20. Plaintiff is further informed and believes, and based thereon alleges that Defendants collectively own, lease, and/or operate one hundred fifty-three (153) Taco Bell restaurants in the states of Virginia, North Carolina, Maryland, West Virginia and Pennsylvania, as described herein.

21.     Defendants' facilities are places of public accommodation as defined in 42 U.S.C. §12181(7) and are therefore subject to the requirements of the ADA.

## FACTUAL ASSERTIONS

### Plaintiff Has Been Denied Full and Equal Access to Defendants' Facilities

22.     Plaintiff visited Defendants' facilities located at 7620 Linton Hall Road, Gainesville, Virginia, on August 8, 2021, where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle, and navigating the facilities, such that extra care was needed to avoid falling and to safely traverse the area, due to excessive slopes in a purportedly accessible Parking Area and other ADA accessibility violations as set forth in more detail below.

23.     Despite this difficulty and risk, Plaintiff plans to return to Defendants' facilities. Plaintiff often travels to the area for a variety of reasons. On August 8, 2021, Mr. Williams traveled to the area with his girlfriend to visit a local coffee shop that specializes in gluten free bakery items. Plaintiff often stops for Taco Bell on road trips due to his preference for their crunch wrap and soft-shell ground beef tacos. Plaintiff regularly travels to the area as he has friends that live there that he likes to visit multiple times a year. Mr. Williams and his girlfriend also regularly visit the state parks in the area. Plaintiff will be visiting the area within the next few months to see his friends, and during those visits, intends to dine at Defendants' Gainesville facility. Furthermore, Plaintiff intends to return to Defendants' facility in Gainesville to ascertain whether it remains in violation of the ADA.

24.     As a result of Defendants' non-compliance with the ADA, Plaintiff's ability to access and safely use Defendants' facilities has been significantly impeded and Plaintiff will be deterred from returning to and fully and safely accessing Defendants' facilities due to the discrimination he has previously encountered there.

**Defendants Repeatedly Deny Individuals with Disabilities Full and Equal Access to Defendants' Facilities**

25.     As the owner and/or operator of its facilities, Plaintiff is informed and believes, and based thereon alleges that, as a Taco Bell franchisee pursuant to franchise agreements, Defendants utilize an Operations Manual or "Answer System" (the "Manual") which sets forth the standards issued by the franchisor, and is required to follow all of the manual's instructions, requirements, standards, specifications, and procedures at each of their locations, including those setting forth management, administration, and maintenance policies, practices, and procedures related to "Daily Outside Maintenance." Plaintiff is further informed and believes, that pursuant to the franchise agreements, Defendants are required to maintain the Restaurant buildings, drivethrus, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the Manual.

26.     Plaintiff is further informed and believes, that pursuant to the franchise agreements, Defendants are required to maintain the Restaurant buildings, drivethrus, parking lots, and landscaped areas at each individual location in conformance with the specifications set forth in the Manual.

27.     Plaintiff is informed and believes that, pursuant to the franchise agreement, Defendants are required to enter into lease agreements containing specific terms, setting forth, among other things, Defendants' obligations to comply with the requirements of the ADA and the regulations promulgated thereunder, and to maintain, repair, and/or replace the parking lot, curbs, driveways, and sidewalks on the leased property. Plaintiffs are further informed and believe, and based thereon allege that Defendants have entered into sale-leaseback agreements at several restaurants that are "absolute NNN" or "zero NNN" in nature, meaning the lessee has absolute

responsibility for maintaining all the features of the property and the landlord has no responsibilities for such maintenance.

28.     Plaintiff is further informed and believes, and based thereon alleges that, pursuant to the franchise agreement, Defendants are required to designate a "Principal Operator" that supervises the operation of Defendants' restaurants within designated market areas. Due to the high number of locations and geographic distances, Defendants manage compliance with their centralized policies, practices, or procedures concerning their daily outside maintenance obligations, and obligations to maintain, repair, and/or replace features within their Parking Areas, through a Director of Operations, who supervises Area Supervisors or Regional Managers, who in turn directly supervise Assistant General or General Managers, and then individual restaurant managers. Plaintiff is informed and believes that collectively, these positions constitute the "Principal Operator" charged with overseeing operations of Defendants' restaurants for compliance with Taco Bell's policies through regular and complete inspections of Defendants' restaurants.

29.     Defendants' *existing* centralized maintenance and operational policies, practices, or procedures have systematically and routinely resulted in excessive sloping conditions in the Parking Areas of Defendants' facilities, in violation of the ADA and its implementing regulations.

30.     On Plaintiff's behalf, investigators examined multiple locations that Plaintiff is informed and believes are owned, controlled, and/or operated by Defendants, and found the following violations which are illustrative of the fact the Defendants' existing policies, practices, or procedures, are discriminatory, unreasonable, inadequate, and routinely result in excessive sloping conditions in the parking spaces, accessible routes and curb ramps:

a.   7620 Linton Hall Road, Gainesville, Virginia:

    i.   The purportedly accessible landing at the top of the curb ramp to the building had a slope exceeding 9.0%[1];

    ii.   The parking surface of three purportedly accessible Spaces/Aisles had a slope exceeding 10.6%, 8.1%, and 5.4%, respectively.[2]

b.   8131 Timberlake Road, Lynchburg, Virginia:

    i.   The parking surface of one or more purportedly accessible Spaces/Aisles had a slope exceeding 4.4%.

c.   7369 Peppers Ferry Boulevard, Fairlawn, Virginia:

    i.   The purportedly accessible curb ramp projected into an access aisle[3] in violation of 36 C.F.R. part 1191, §406.5;

    ii.   The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 7.0% and curb ramp flare slopes exceeding 13.8%[4].

d.   3035 Riverside Drive, Danville, Virginia:

    i.   The purportedly accessible curb ramp projected into an access aisle;

    ii.   The purportedly accessible curb ramp located on the route to the building entrance had a flare run slope exceeding 39.0%.

e.   1600 Wesel Boulevard, Hagerstown, Maryland:

    i.   The parking surface of one or more purportedly accessible Spaces/Aisles had a slope exceeding 11.1%.

---

[1] The 2010 Standards for Accessible Design ("2010 Standards"), 36 C.F.R. part 1191, at §§ 405.7.1 and 406.4 set the maximum threshold for ramp landing slopes at not steeper than 1:48, i.e., 2.1%, The 2010 Standards continued the 1991 Standards for Accessible Design ("1991 Standards") without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.3.7, §4.8.5.

[2] Pursuant to the 2010 Standards, parking spaces or access aisles may not have slopes steeper than 1:48, i.e., 2.1%. *See,* 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.6.3.

[3] Pursuant to the 2010 Standards, curb ramps cannot project into parking spaces or access aisles. *See,* 36 C.F.R. part 1191, § 406.5. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.6, §4.7.8.

[4] The 2010 Standards at §§ 405.2 and 406.1 set the maximum threshold for ramp running slopes at not steeper than 1:12, i.e., 8.3%, and limit curb ramp flares to not steeper than 1:10, i.e., 10%. The 2010 Standards continued the 1991 Standards without change. *See,* Appendix D to 28 C.F.R. Part 36, § 4.7.5, §4.8.2.

f.   1360 North Great Neck Road, Virginia Beach Virginia:

    i.   The purportedly accessible curb ramp projected into an access aisle;
    ii.  The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 8.8%.

g.   9420 West Broad Street, Richmond, Virginia:

    i.   The parking surface of one or more purportedly accessible Spaces/Aisles had a slope exceeding 6.2%, 5.8%, 4.4% & 4.1%.

h.   1732 West Main Street Salem, Virginia:
    i.   The purportedly accessible curb ramp projected into an access aisle;
    ii.  The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 4.4%.

i.   3306 Westmoreland Drive, Roanoke, Virginia:

    i.   The purportedly accessible curb ramp projected into an access aisle;
    ii.  The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 6.7% and curb ramp flare slopes exceeding 24.2%.

j.   4220 Franklin Road, South-West Roanoke, Virginia:

    i.   The purportedly accessible curb ramp projected into an access aisle;
    ii.  The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 10.5% and curb ramp flare slopes exceeding 15.8%.

k.   2700 Lee Highway, Troutville, Virginia:

    i.   The purportedly accessible curb ramp projected into an access aisle;
    ii.  The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 6.2% and curb ramp flare slopes exceeding 9.9%.

l.   617 Hickory Ridge Drive, Greensboro, North Carolina:

      i.   The purportedly accessible landing at the top of the curb ramp to the building had a slope exceeding 11.9%.

  m.  349 Akron Drive, Winston Salem, North Carolina:

      i.   The purportedly accessible landing at the top of the curb ramp to the building had a slope exceeding 10.1%.

  n.  1299 Silas Creek Parkway, Winston Salem, North Carolina:

      i.   The purportedly accessible curb ramp located on the route to the building entrance had a running slope exceeding 14.1%;

     ii.   The landing at the top of the curb ramp to the building had a slope exceeding 13.8%.

31.    As evidenced by the widespread excessive sloping conditions present in the Parking Areas of Defendants' facilities, absent a change in Defendants' existing procedure, excessive sloping conditions will continue to reoccur in Defendants' facilities even after the existing barriers have been remediated.

## JURISDICTION AND VENUE

32.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

33.    Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

34.    35.    Venue in this judicial district and division is proper under 28 U.S.C. § 1391(b)(2) and Local Rule 3(C) in that this is the judicial district and division in which a substantial part of the events and/or omissions at issue occurred.

## CLASS ASSERTIONS

35.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of himself and the following nationwide class:

> All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any BURGERBUSTERS INC.; BURGERBUSTERS III, L.C.; BURGERBUSTERS IV, L.L.C.; BURGERBUSTERS V, L.L.C., BURGERBUSTERS VIII, L.L.C., BURGERBUSTERS IX, L.L.C., BURGERBUSTES X, L.L.C., BURGERBUSTERS XI, L.L.C., BURGERBUSTERS, XII, L.L.C., location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendants' failure to comply with the ADA's slope regulations within the purportedly accessible Parking Areas of its facilities.

36.     <u>Numerosity</u>: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court and will facilitate judicial economy.

37.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class. The claims of Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

38.     <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully accessible and independently usable as above described.

39.     <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who

are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

40.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## SUBSTANTIVE VIOLATION

## VIOLATION OF THE ADA, TITLE III

## [42 U.S.C. §§ 12101, *et seq.*]

## (Against all Defendants)

41.     Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

42.     At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of mobility. Accordingly, he is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(2).

43.     Defendants own, lease, and/or operate restaurants that are places of public accommodation as defined under Title III of the ADA. 42 U.S.C. § 12181(7)(F).

44.     Plaintiff is informed and believes, and based thereon asserts that Defendants' facilities were altered, designed, or constructed after the effective date of the ADA.

45.     The ADA, franchise agreements, and lease agreements require the accessible features of Defendants' facilities, which include Parking Areas of their facilities, to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities.

46.     The architectural barriers described above demonstrate that Defendants' facilities were not constructed or altered in a manner that causes them to be readily accessible to and usable

by individuals who use wheelchairs in the first instance, and/or that Defendants' facilities were not maintained or operated so as to ensure that they remained accessible to and usable by individuals who use wheelchairs.

47.     Furthermore, the architectural barriers described above demonstrate that Defendants have failed to remove barriers as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

48.     Defendants' repeated and systemic failures to remove architectural barriers, to maintain the accessible features of their facilities, and/or modify its existing procedures to ensure compliance with the sloping requirements of the ADA's implementing regulations once constructed, constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

49.     Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

50.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

51.     Given that Defendants have not complied with the ADA's requirements to make Defendants' facilities fully accessible to, and independently usable by, individuals who use wheelchairs, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for:

a.      A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendants' facilities, as described

above, are not fully accessible to, and independently usable by, individuals who use wheelchairs;

b.       A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that (i) directs Defendants to take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs; (ii)  directs Defendants to modify their existing procedures to prevent the reoccurrence of excessive sloping conditions in the Parking Areas of their facilities post-remediation; and (iii) directs that Plaintiff shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.       An Order certifying the class proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.       Payment of costs of suit;

e.       Payment of reasonable attorneys' fees pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and

f.       The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated:  September 24, 2021                          Respectfully Submitted,

                                                    /s/ Rachel Nadas
                                                    Rachel Nadas, VSB No. 89440
                                                    **HANDLEY   FARAH   &   ANDERSON**
                                                    **PLLC**
                                                    200 Massachusetts Avenue NW, 7th Floor
                                                    Washington, DC 20016
                                                    Phone: (202) 899-2991
                                                    rnadas@hfajustice.com

                                                    Jordan T. Porter (*pro hac vice* forthcoming)
                                                    **NYE, STIRLING, HALE**
                                                    **& MILLER, LLP**
                                                    33 West Mission Street, Suite 201
                                                    Santa Barbara, CA 93101
                                                    Phone: 805-963-2345
                                                    jordan@nshmlaw.com

                                                    Benjamin J. Sweet (*pro hac vice*
                                                    forthcoming)

**NYE, STIRLING, HALE**
**& MILLER, LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: 412-857-5352
ben@nshmlaw.com

*Attorneys for Plaintiff and the Class*

17